IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARQUIS WILSON, | : | |
|     Plaintiff, | : | |
| | : | |
|     v. | : | CIVIL ACTION NO. 19-4257 |
| | : | |
| UNITED STATES OF AMERICA, | : | |
|     Defendant. | : | |

**McHUGH, J.**                                                                                               **April 26, 2022**
**MEMORANDUM**

    This is an action brought under the Federal Tort Claims Act by a prisoner who alleges delayed diagnosis of testicular cancer while in custody, resulting in removal of a testicle and other effects that he contends could have been avoided by an earlier diagnosis. The Court was unsuccessful in securing counsel with the result that Plaintiff must proceed *pro se*. He does not have the benefit of expert testimony but argues that it is unnecessary to the prosecution of his claim. As to negligence, Plaintiff may well be correct. But this case involves complex and subtle issues of causation and damages, beyond the competence of a lay factfinder – even a judge - to decide in the absence of expert opinion. I am therefore constrained to grant the motion of the United States for summary judgment.

    **I.**    **Factual Allegations and Procedural Posture:**

    Plaintiff, Marquis Wilson, has sued under the Federal Tort Claims Act (FTCA) against the United States of America for professional negligence in relation to medical care he received at the Federal Detention Center (FDC) in Philadelphia, Pennsylvania. In 2014, Plaintiff was placed at the FDC as a pretrial detainee. Compl. ¶ 2, ECF 1. At some unspecified point in 2017, he noticed

a lump on his right testicle and complained to FDC medical staff. *Id*. ¶ 3. In November 2017, Plaintiff was evaluated by FDC medical staff, who acknowledged that a lump in that area was probably cancerous. *Id*. ¶ 4. By the end of November 2017, Plaintiff alleges that the lump was "grapefruit-sized." *Id.* ¶ 9. He further alleges that in spite of his repeated communications to FDC staff about his worsening medical condition, no further treatment was provided at the FDC. *Id*. On February 5, 2018, having been sentenced, Plaintiff was transferred to the Bureau of Prison's USP-Allenwood facility. *Id*. ¶ 11. On February 6, 2018, Plaintiff saw Allenwood medical staff and was told that "the size of the swelling was unusual." *Id*. An ultrasound was taken and it was determined that the lump was cancerous. *Id*. ¶ 13. Plaintiff alleges that Allenwood medical staff told him that the lump "should have been treated earlier for best results but by that point the only course of action was to remove one of Plaintiff's testicles which was done surgically." *Id*. The cancer was treated by the surgical removal of Plaintiff's right testicle on February 21, 2018. *Id*.; Answer ¶ 13, ECF 28.

  Mr. Wilson filed his complaint in this case after his administrative complaint was denied. ECF 1. He did not file a certificate of merit with his complaint. The Government contends that Pa. R. Civ. P. 1042.3 applies in actions brought under the FTCA and provided Wilson notice of its intention to move to dismiss the complaint for failure to file a certificate of merit. Pennsylvania Rule 1042.3 requires that any action alleging professional negligence must be supported by an affidavit of merit warranting that a qualified expert has reviewed the matter and concluded that there is a "reasonable probability" that there was a breach of the applicable standard of care or that expert testimony is unnecessary for prosecution of the claim. Mr. Wilson was granted multiple extensions of time to take a position on the certificate of merit. ECF 12, 15, 19. On October 7, 2020, the Court finally denied an additional request for an extension, noting that Plaintiff had been

granted extensions dating back to December 2019.  Simultaneously, the Court denied Plaintiff's request for appointment of counsel.  ECF 22.

On October 8, 2020, the United States moved to dismiss Wilson's complaint for failure to file a certificate of merit.  ECF 23.   In his response, Mr. Wilson further elaborated on his claim, alleging that because of the delay in diagnosis and surgery, his cancer "advanced to the second stage, [which resulted in] a serious abdominal surgery, which led to plaintiff permanently losing his ejaculatory function, diminishing his procreation ability, on top of the already rigorous chemotherapy regimen Plaintiff suffered."  ECF 24 at 3.  Plaintiff also asked that the Court "treat his reply . . . as a Certification under [Pa. R. Civ. P.] 1042.3(a)(3) that 'expert testimony of an appropriate license [sic] professional is unnecessary for prosecution of claims [sic]' and find that this certificate satisfies the requirement of this rule."  *Id*. at 11.  Wilson emphasized, "Plaintiff unequivocally asserts that his claim of negligence is so patently obvious, that expert testimony is not required…" *Id*. at 11-12.  The government then withdrew its Motion to Dismiss and filed the pending motion for summary judgment.  ECF 26, 29.

After further reviewing the record and Plaintiff's answer to the motion, the Court, *sua sponte,* reconsidered Plaintiff's request for appointment of counsel and listed Plaintiff's case on the Court's Pro Bono Panel for prisoner cases.  ECF 31.  Case deadlines were stayed while the case remained on the panel.  It remained pending for over a year without being taken by an attorney.  In February 2022, Plaintiff communicated that he wanted his case to be removed from the prisoner panel, ECF 40, and Plaintiff was granted 45 days in which to file any additional submissions in response to the Government's motion for summary judgment.  ECF 41.  That period has now elapsed without Plaintiff filing any further materials, rendering the motion for summary judgment ripe for consideration.

## II. Standard of Review

The party's motion for summary judgment is governed by the well-established standard for summary judgment set forth in Fed. R. Civ. P. 56(a), as amplified by *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).[1]

## III. Discussion

Under the FTCA, the state law in which the alleged tortious conduct occurred supplies the substantive tort law. 28 U.S.C. § 1346(b)(1). In Pennsylvania, to state a prima facie cause of action for medical malpractice, a plaintiff must demonstrate the elements of negligence: "a duty owed by the physician to the patient, a breach of that duty by the physician, that the breach was the proximate cause of the harm suffered, and the damages suffered were a direct result of harm." *Hightower–Warren v. Silk*, 698 A.2d 52, 54 (Pa. 1997). "With all but the most self-evident medical malpractice actions there is also the added requirement that the plaintiff must provide a medical expert who will testify as to the elements of duty, breach, and causation." *Quinby v. Plumsteadville Fam. Prac., Inc.*, 907 A.2d 1061, 1070–71 (Pa. 2006).

Regardless of whether Pennsylvania Rule of Civil Procedure 1042.3(a)(3) applies to actions brought under the FTCA,[2] Plaintiff is proceeding without an expert, relying upon the

---

[1] Although there has been no factual discovery conducted, Defendant's Answer indicates that the material facts here are not in dispute and summary judgment is appropriate. *See* Fed.R.Civ.P. 56 ("Unless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of all discovery.") While I note that Defendant denies various facts, Defendant admits the material facts essential to Plaintiff's claim: that Plaintiff was evaluated by FDC in November 2017 and medical staff noted a swelling in his right testicle at that time, that Plaintiff sent various messages to FDC staff members about his medical condition, and that Plaintiff did not receive an ultrasound, diagnosis, or surgery until his transfer to FCI Allenwood in February 2018. Answer, ECF 28.

[2] In the context of diversity jurisdiction, the Third Circuit has held that the Pennsylvania certificate of merit requirement is substantive state law that must be followed by federal courts. *Liggon-Redding v. Estates of Sugarman*, 659 F.3d 258, 265 (3d Cir. 2011). It has not addressed whether the certificate of merit requirement applies to an action brought under the FTCA. Admittedly, it has found the Rule applicable in several non-precedential opinions, *see Cuevas v. United States*, 580 F. App'x 71, 75 (3d Cir. 2014);

doctrine of *res ipsa loquitur* to prove his case. The Government responds that without the support of an expert Plaintiff cannot prove essential elements of claim, such that it fails as a matter of law.

Where the doctrine of *res ipsa loquitur* properly applies a plaintiff may satisfy the burden of producing evidence of negligence, even in a professional negligence case, by showing that the injury is of a sort that would not have occurred in the absence of the defendant's negligence. *Quinby*, 907 A.2d at 1071. Pennsylvania has adopted the Restatement (Second) of Torts § 328D, which formulates the evidentiary theory of *res ipsa loquitur* as follows:

> (1) It may be inferred that harm suffered by the plaintiff is caused by negligence of the defendant when
>
> > (a) the event is of a kind which ordinarily does not occur in the absence of negligence;

---

*Baumgardner v. Ebbert*, 535 F. App'x 72, 77 (3d Cir. 2013); *Smith v. United States,* 498 F. App'x. 120, 122 (3d Cir. 2012); *Hodge v. U.S. Dep't of Just.*, 372 F. App'x 264, 267 (3d Cir. 2010); *Booker v. United States*, 366 F. App'x 425, 426 (3d Cir. 2010). Such decisions are not binding. *United States v. James*, 928 F.3d 247, 254 n.5 (3d Cir. 2019) (noting that "[i]t is contrary to our Internal Operating Procedures, however, to treat non-precedential opinions as having any precedential effect."). And the fact that there are several non-precedential decisions does not add to their weight. *Faush v. Tuesday Morning, Inc.,* 808 F.3d 208, 212 n.1 (3d Cir. 2015) (sympathizing with district judge who "understandably relied" on three non-precedential opinions before reversing him, noting their non-binding status). *Accord, James, supra,* (disregarding the district court's discussion of two nonprecedential cases because of their lack of authority).

It is not intuitively obvious that the Pennsylvania rule should apply in this federal statutory context. A claim brought under the FTCA, a federal statute that establishes specific procedures for claims against the Government, differs in material ways from actions brought pursuant to the diversity jurisdiction of federal courts. There are no federal/state forum shopping concerns in FTCA cases, one of the concerns that lies at the heart of an *Erie* analysis. Similarly, the respect for state law and federalism concerns that characterize *Erie*'s analysis are not present under the FTCA, where Congress has specifically prescribed a mechanism for resolving claims against the federal government.

In precedential opinions, the Second, Fourth, Sixth, and Seventh Circuits have held that a state law certificate of merit requirement as a prerequisite to filing an FTCA medical malpractice action conflicts with the Federal Rules of Civil Procedure. *Corley v. United States*, 11 F.4th 79, 87-88 (2d Cir. 2021); *Pledger v. Lynch*, 5 F.4th 511, 518 (4th Cir. 2021); *Gallivan v. United States,* 943 F.3d 291, 293–94 (6th Cir. 2019); *Young v. United States*, 942 F.3d 349, 351–52 (7th Cir. 2019); *see also Petrus v. United States*, No. CV 16-53, 2022 WL 910263, at *2 (D.V.I. Mar. 29, 2022) (Savage, J.) (finding the reasoning of these circuit courts persuasive and holding that Minnesota's certificate of merit requirement did not apply in FTCA case); *Shields v. United States*, 436 F. Supp. 3d 540, 547 (D. Conn. 2020) (holding that Connecticut's certificate of merit requirement does not apply in FTCA context and discussing differences between FTCA and diversity actions in dicta).

5

> (b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and
>
> (c) the indicated negligence is within the scope of the defendant's duty to the plaintiff.

REST. (SECOND) TORTS § 328D; *Quinby*, 907 A.2d at 1072. Similarly, with respect to causation, expert testimony has been held to be unnecessary where there is an obvious causal relationship between the medical care provided and the patient's injuries, allowing a lay factfinder to rely on common knowledge to infer both negligence and causation. For example, in *Quinby v. Plumsteadville Fam. Prac., Inc.*, 907 A.2d 1061, 1073 (Pa. 2006), the Supreme Court drew a distinction between "medically complex" cases with issues beyond "lay knowledge" where expert testimony is required and "non-complex medical scenario[s]" where the requirement of expert testimony may be dispensed. *Id.* There, it held that a quadriplegic falling from an examination table was in the latter category and warranted charging a jury on *res ipsa loquitur*. *Id.*; s*ee also Fessenden v. Robert Packer Hosp.*, 97 A.3d 1225 (Pa. Super. Ct. 2014) (applying doctrine where sponge was found inside patient's abdomen four years after surgery and patient had not had any later surgical procedures).

On the record here, a fact finder could conclude that there was unreasonable delay in responding to Mr. Wilson's complaints without the benefit of expert testimony. It takes no medical expertise to understand that where cancer is among the possible diagnoses, the standard of care requires prompt attention. Furthermore, under Pennsylvania law, a claim for malpractice can also be sustained under general principles of negligence. *See Incollingo v. Ewing*, 282 A.2d 206 (Pa. 1971), *abrogated on other grounds by Kaczkowski v. Bolubasz*, 421 A.2d 1027 (Pa. 1980). Plaintiff was first evaluated by FDC medical staff in November 2017 for a large, hard swelling in his testicle. By the end of November 2017, Plaintiff alleges that the swelling was the size of a

grapefruit.  In its Answer, the Government denies that the lump was grapefruit sized, but admits that the FDC staff observed that the swelling was "large" and "hard."  Answer ¶ 3.  And though it denies that the FDC failed to diagnose, treat, or care for Plaintiff, the Government does not identify anything else that the FDC medical staff did to follow up on what was observed.  Significantly, treatment progressed rapidly once he was transferred to Allenwood: he arrived at Allenwood on February 5, 2018, was evaluated by Allenwood medical staff on February 6, 2018, had an ultrasound on February 14, 2018, was seen by a urologist and diagnosed with cancer on February 19, 2018, and had surgery on February 21, 2018.  The fact that tumors can be cancerous and the importance of diagnosing them promptly is within common lay knowledge, and certainly confirmed by the speed with which Allenwood staff acted.

Plaintiff's claim ultimately fails, however, because the consequences of the delay are not self-evident.  Where the issue of causation is complex, expert testimony is required.  *See e. g., Bearfield v. Hauch*, 595 A.2d 1320, 1322 (Pa. Super. Ct. 1991) (holding that, in the absence of a medical expert, the jury had no way to determine whether nerve damage during surgery was the result of negligence, or an unavoidable consequence of the surgery); *Gallegor by Gallegor v. Felder,* 478 A.2d 34, 37 (Pa. Super. Ct. 1984) (denying liability for nerve injury suffered during ear surgery due to complexity of the surgery and lack of expert testimony to link to nerve damage to improper technique); *Mertig v. Booth*, Civil Case No. 11-1462, 2012 WL 1431238, at *2 (E.D. Pa. Apr. 25, 2012) (*res ipsa* inappropriate where alternate causes of infection following surgery could not be eliminated without expert testimony) (Savage, J.) .

This is not a case where a surgeon left a foreign object in a patient's body or operated on the wrong limb. Plaintiff concedes that removal of his testicle was required even with proper care but argues that the delay allowed his cancer to spread and advance to the second stage, which then

required increased chemotherapy and a more invasive abdominal surgery to remove additional cancerous lymph nodes, permanently destroying his ejaculatory function.  The delay here was approximately three months.  The degree to which the cancer would have spread within the limited window,  and the extent of the required surgery, represent complex, nuanced issues.  To rely on *res ipsa loquitor*, the evidence must show that "other responsible causes" for Plaintiff's injury are "sufficiently eliminated," which is impossible to determine here without an expert to opine about the nature of Plaintiff's cancer, its rate of growth, the necessary  scope of surgical treatment, and side effects that might have resulted even in the absence of any delay.

      I am sensitive to the significant burden a pro se prisoner faces in finding and paying for an expert, which is why I reconsidered Plaintiff's request for counsel and listed this case on the prisoner civil rights pro bono panel well beyond the normal timeline and allowed it to remain for nearly one year without success. *See Tabron v. Grace*, 6 F.3d 147, 157, n.7 (3d Cir. 1993) (noting practical restraints on district courts' ability to appoint counsel including lack of funding and limited supply of lawyers, as well as that "courts have no authority to compel counsel to represent an indigent civil litigant.").[3]  In posting the case on this Court's panel, I highlighted the fact that counsel accepting representation could seek reimbursement of expert witness fees through the Court's non-appropriated funds.  It remained on the panel until it was removed at Mr. Wilson's request.  I cannot say whether an expert would have found causation within such a brief window, or whether representation by counsel would have changed the outcome.  I can and must say that, under the controlling legal standard, the United States is entitled to summary judgment.

---

[3] Similarly, although the Third Circuit has recognized the barriers faced by pro se prisoner plaintiffs who have the inability to pay for or obtain expert witnesses and cannot proceed in a civil action without expert testimony, it has held that there is no statutory authority for courts to authorize payment of expert witness fees in civil suits for damages even in cases involving pro se indigent prisoners. *See Boring v. Kozakiewicz*, 833 F.2d 468, 474 (3d Cir.1987).

## IV. Conclusion

For the reasons set forth above, I am obligated to grant Defendant's Motion for Summary Judgment in full.  An appropriate order follows.


    /s/ Gerald Austin McHugh
United States District Judge